UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

JAMES MCCLOUD,

                  Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CR-192-2 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 15, 2021, James McCloud ("Defendant") pled guilty to the sole count of a Superseding Indictment, charging him and two co-Defendants with one count of bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 70 months of incarceration, 2 years of supervised release with special conditions, restitution in the amount of $825, and a mandatory $100 special assessment.

## BACKGROUND

On March 29, 2018, the Government filed a criminal Complaint against Defendant charging him with bank robbery in violation of 18 U.S.C. § 2113(d) and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). On August 30, 2018, the United States filed a Superseding Indictment against Defendant and his two co-defendants, Kassin Rivers and Rodney Griffin, charging them with one count of bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. On November 15, 2021, Defendant pled guilty to the sole count of the Superseding Indictment.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I. Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

The Government notes this Defendant has at least forty (40) arrests, eleven (11) felony convictions, and twenty-two (22) misdemeanor convictions. The prior convictions include Forgery in the Second Degree; Grand Larceny in the Fourth Degree; and Robbery in the Third Degree. Indeed, this Defendant has continuously committed crimes since the age of fifteen (15).

2

Although he has a criminal History Category of VI, that category might well underrepresent his true criminal culpability, a reality this Court is empowered to consider as an aggravating factor.

For decades the Defendant engaged in various forms of theft, assaults, and other crimes, apparently undeterred by prison, jail, fines or the impact of his criminal conduct on innocent civilians. The Government argues the decades long audacity of this criminal history demonstrates the need for a Guidelines sentence, which it calculates to range between seventy (70) and eighty-seven (87) months.

Defense counsel, emphasizing the physical and psychiatric health problems of this Defendant, urges a below Guidelines sentence of time served to be followed by a period of supervised release.

History and Characteristics of the Defendant

Defendant was born on August 28, 1964, in Brooklyn, New York to Linniel and Warren McCloud. Presentence Investigation Report ("PSR") ¶ 78, ECF No. 152. Defendant's father, who worked as a professional gospel singer and construction worker, died in a construction accident in the 1970s. *Id.* Defendant's mother, a nurse, died in 2020 at eighty years of age. *Id.* His father was part of his life up until his death. *Id.* ¶ 80. Defendant resided with his mother until approximately 15 years of age. Thereafter, he became homeless, sleeping in hallways, vehicles, friends' homes or on the streets, except when he was incarcerated or when he lived with his aunt in Brooklyn, from approximately 2015 to 2018. *Id.* Defendant's aunt passed away of COVID-19. *Id.*

Defendant has two surviving siblings: Lula McCloud (age 60), who resides in Brooklyn, New York, and has five children, and Ricky McCloud (in his 50s), who also resides in Brooklyn

3

and has one child. *Id.* ¶ 79. Defendant has not spoken to his siblings since his arrest for the instant offense.[1] *Id.*

Defendant was in custody at the Metropolitan Correctional Center (MCC) in Manhattan until September 2021, when he was transferred to the Metropolitan Detention Center (MDC) in Brooklyn, where he has remained since. *Id.* While in custody at the MCC, Defendant reported suffering through terrible conditions during the COVID-19 pandemic. *Id.* Specifically, Defendant was under quarantine lockdown with twenty-six other prisoners, in very close quarters, where they shared one sink, one urinal, and one shower. *Id.* In addition, they were forced to wash their clothes in the shower. *Id.*

According to the competency to stand trial evaluation report, Defendant reported his family had limited resources during his childhood, stating there were occasions where the family did not have sufficient food. *Id.* ¶ 81. Defendant lived with his maternal grandmother for a time during his childhood in Bennettsville, South Carolina. *Id.* Defendant reported his grandmother cared for multiple other children while he resided with her. *Id.* He reported a history of physical abuse, stating his older brother would hold him down as his mother beat him with an extension cord. *Id.* He stated he often felt ostracized from his family and turned to friends for comfort. *Id.* He also expressed sadness at the loss of multiple siblings, stating they died as a result of an accidental drowning, homicide, diabetes, and HIV/AIDS. *Id.*

Defendant has never married and is currently not in a relationship. *Id.* ¶ 82.

Defendant has one daughter, Zaheeda McCloud (age 20), from a previous relationship with Carmeita Walker. *Id.* ¶ 83. Defendant reported the whereabouts of Ms. Walker and his

---

[1] According to the competency to stand trial evaluation report, Defendant reported he has five sisters and three brothers, three of whom are currently living (Rickey, Willie, and Lula). *Id.*

daughter are unknown. *Id.* He last spoke to his daughter prior to the COVID-19 outbreak at the MDC in 2019. *Id.*

**Physical Condition**

Defendant suffers from several health conditions and issues. Defendant lost his teeth while in custody at the MCC. *Id.* ¶ 86. He noted that he did not receive medical care at either the MCC or the MDC. *Id.* According to Defendant, he has been unable to obtain toenail clippers from Bureau of Prison staff, making it painful for him to walk in shoes. *Id.*

Defendant also reported suffering two head injuries. *Id.* ¶ 87. At age ten he accidentally hit his head on a pipe and was rendered unconscious by the blow. *Id.* Following this event, Defendant reported experiencing seizures. *Id.* He initially experienced grand mal seizures approximately once per week, though they reportedly decreased in frequency over time. *Id.* His most recent seizure occurred in February 2019, while incarcerated. *Id.* He has been prescribed medication for his seizures and for mood disturbances. *Id.* At age fifteen he suffered a second head injury when he was hit by a car while playing in the street. *Id.* Defendant also reports experiencing arthritis pain in his back and knees. *Id.*

**Mental and Emotional Health**

Defendant reported suffering from depression. *Id.* ¶ 88. He also reported meeting with a psychiatrist during his childhood because he was a "troubled kid," often fighting and running away from home. *Id.* ¶ 89. He reported undergoing a psychiatric evaluation in the 2000s at Woodhull Hospital in Brooklyn and Interfaith Medical Center in Brooklyn. *Id.* He was diagnosed with bipolar disorder, schizophrenia, and antisocial personality disorder and was prescribed medication. *Id.* In addition, records from Community Counseling & Mediation in Brooklyn indicated Defendant attended one appointment in April 2010 and underwent a

5

psychosocial intake assessment on February 1, 2017. *Id.* During his intake assessment, Defendant presented with anxiety, depression, difficulty sleeping, and auditory and visual hallucinations of deceased loved ones. *Id.* He further reported experiencing agitation and difficulty controlling his anger. *Id.* Defendant was preliminarily diagnosed with schizoaffective disorder, cannabis use disorder, and adjustment disorder with depressed mood. *Id.* He also reported two or three suicide attempts via hanging while incarcerated. *Id.* He recalled one instance at sixteen or seventeen years of age while incarcerated, when he tried to hang himself because he was unhappy with his legal situation, felt lonely due to lack of visits, and no longer wished to be alive. *Id.* Defendant has also experienced passive suicidal ideation, both while incarcerated and in the community. *Id.* Finally, the defendant reported seeing and hearing the voices of his deceased siblings. *Id.*

**Substance Abuse**

Defendant reported an extensive history of substance abuse. *Id.* ¶ 90. Defendant first smoked marijuana as "a kid" and last smoked marijuana prior to his arrest for the instant offense. *Id.* He has been a heroin abuser for over 30 years; he ingested a bundle per day until his arrest for the instant offense. *Id.* In addition, he began ingesting between $50 and $60 worth of cocaine and crack cocaine per day at seventeen years of age. *Id.* Defendant reported participating in a drug counseling program but did not complete it; he was unable to recall the name of the drug program or where it was located. *Id.*

Defendant reported alcohol use since nine years of age; daily marijuana use from fifteen years of age through his 40s; daily powder cocaine and crack cocaine use since nineteen years of age, using three and a half grams each time; and daily heroin usage since nineteen years of age, ingesting approximately "20 bags a day." *Id.* ¶ 91. Defendant attended approximately five

court-ordered outpatient substance abuse programs. *Id.* Records from Community Counseling & Mediation indicated he attended a program from 2010 to 2011 and self-referred for treatment in 2017, due to a reported need for psychiatric medication. *Id.* According to the Defendant, he committed crimes beginning at fourteen years of age to fund his substance abuse and provide for himself and his family. *Id.*

While incarcerated, Defendant successfully completed Alcohol and Substance Abuse Treatment (ASAT) programs on October 13, 2002 and January 15, 2017. *Id.* ¶ 92. Defendant has advised he is interested in receiving additional drug treatment counseling. *Id.*

**Educational, Vocational and Special Skills**

Defendant reported he attended Rothschild Junior High School in Brooklyn but left after completing the seventh grade because he was expelled. *Id.* ¶ 93. He reported having behavioral issues in school, including being suspended and expelled eight times due to fighting. *Id.* Defendant reported he never earned a Graduate Equivalency Diploma. *Id.*

**Employment Record**

Defendant worked as a self-employed barber, cutting customer's hair at his aunt's house. *Id.* ¶ 94. He earned between $15 and $18 per haircut. *Id.* Defendant also reported working as a supermarket grocery bagger from eleven to fifteen years of age. *Id.* ¶ 95. He reported he received $670 per month in Social Security disability for seven or eight years following his diagnoses of bipolar disorder and schizophrenia. *Id.* Defendant advised that he has not filed personal income tax returns because he had marginal income. *Id.* ¶ 96. Based on his limited employment history, Probation states it does not appear Defendant was required to file taxes for the previous years. *Id.*

<u>Nature and Circumstances of the Offense</u>

On December 23, 2017, Defendant and his co-Defendants robbed a Federal Deposit Insurance Corporation-insured HSBC Bank branch located in Queens, New York. After Griffin and Defendant entered the bank, Griffin proceeded to the teller station while Rivers remained at the front entrance of the bank as a lookout. Griffin grabbed an HSBC Bank customer, brandished what appeared to be a firearm at the teller, and pointed the firearm at the customer's head, stating "Give me the money or I'll shoot the customer." The teller gave Griffin $825.00, and he and Rivers left the bank. They then entered a silver Jaguar driven by Defendant. Surveillance footage revealed distinct features of the vehicle, and police officers responding to the crime scene recovered an orange plastic bag used at the robbery with Griffin's fingerprint on it.

On January 11, 2018, law enforcement officials learned the silver Jaguar used in the bank robbery was sold for $100 to a charitable organization by Defendant. A search of Griffin's and Defendant's cellular telephones revealed they were in the vicinity of the robbery and in contact with each other throughout that day. In addition, telephone records revealed Griffin, Rivers, and Defendant were on a three-way call at the time of the robbery.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. The maximum term of imprisonment is twenty-five years. 18 U.S.C. § 2113(a) and (d). By statute, Defendant faces a maximum supervised release term of five years. 18 U.S.C. § 3583(b)(1). The maximum fine is $250,000.00, *see* 18 U.S.C. § 3571(b), and a special assessment of $100.00 is mandatory, 18 U.S.C. § 3013. Pursuant to 18 U.S.C. § 3663A, restitution is owed to HSBC Bank, and as outlined in his plea agreement, Defendant consents to the entry of a forfeiture money judgment.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

Under USSG § 2B3.1, the base offense level for Defendant's offense is twenty (20). Since property of a financial institution, specifically, HSBC Bank, was taken, the offense level is increased by two (2) under USSG § 2B3.1(B)(1). Because a dangerous weapon was brandished during the robbery, three (3) levels are added per USSG § 2B3.1(B)(2)(E). In addition, Defendant clearly demonstrated acceptance of responsibility for the offense, so the offense level is decreased by another two (2) levels. Finally, because the Government was notified in a timely manner of

9

Defendant's intention to enter a plea of guilty, the offense level is decreased by one (1). This results in a total offense level of twenty (20).

All parties agree Defendant has a criminal history category of VI. For a total offense level of twenty (20) and a criminal history category of VI, the guidelines imprisonment range is seventy (70) to eighty-seven (87) months of incarceration. The guidelines further suggest a term of supervised release of two (2) to five (5) years; a fine of between $15,000.00 and $150,000.00; and mandatory restitution and forfeiture under USSG §§ 5E1.1 and 5E1.4.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). On January 9, 2020, Defendant's co-defendant, Rodney Griffin, was sentenced to 57 months of incarceration to be followed by five years of supervised release. On April 11, 2022, Defendant's other co-defendant, Kassin Rivers, was sentenced to time served (approximately 43 months of imprisonment) and three years of supervised release. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to address "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). The provisions of the

10

Mandatory Victim Restitution Act of 1996 apply to Defendant's offense. Pursuant to 18 U.S.C. § 3663A, restitution is owed to HSBC Bank.

## CONCLUSION

A sentence of 70 months of incarceration, 2 years of supervised release with special conditions, restitution in the amount of $825, and a mandatory $100 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 26, 2022
Brooklyn, New York